# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHARLIE WILKERSON,                    )
                                      )
                    Plaintiff,        )
                                      )
          v.                          )          1:15CV00944
                                      )
CAROLYN W. COLVIN,                    )
Acting Commissioner of Social         )
Security,                             )
                                      )
                    Defendant.        )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Charlie Wilkerson, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 13; <u>see also</u> Docket Entry 11 (Plaintiff's Memorandum), Docket Entry 14 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I.  PROCEDURAL HISTORY

Plaintiff applied for SSI, alleging a disability onset date of February 1, 2004. (Tr. 188-91.)[1] Upon denial of that application

---

[1] Plaintiff filed a previous application for SSI, which resulted in an ALJ decision finding Plaintiff disabled from January 25, 2007, to November 21, 2008.
(continued...)

initially (Tr. 84-99, 121-30) and on reconsideration (Tr. 100-16, 131-40), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 141). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 30-44.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 14-25.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-5), and Plaintiff filed an action in this Court seeking judicial review of the Commissioner's final decision, Wilkerson v. Colvin, 1:13CV522 (M.D.N.C. June 28, 2013) (Docket Entry 2). Pursuant to Defendant's consent motion to remand (see id., Docket Entry 15), the Court remanded the matter for further administrative proceedings, including evaluation of any Medicaid disability decision involving Plaintiff and reconsideration of Plaintiff's residual functional capacity (Tr. 814-16). In turn, the Appeals Council remanded the matter back to the ALJ for further administrative proceedings consistent with the Court's order. (Tr. 817-22.)

The ALJ held a second hearing, attended by Plaintiff, his attorney, and a VE (Tr. 759-92), at which Plaintiff amended his onset date to October 1, 2009, the date of his second SSI application (see Tr. 761-62). The ALJ thereafter determined that Plaintiff did not meet the qualifications for disability under the

---

[1] (...continued)
(Tr. 71-83.) The present action does not contest that prior determination.

2

Act. (Tr. 746-58.) The Appeals Council subsequently denied Plaintiff's request for review (Tr. 733-36), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] has not engaged in substantial gainful activity since October 1, 2009, the application date.

. . .

2. [Plaintiff] has the following severe impairments: status post, right below the knee amputation; peripheral vascular disease (PVD); cardiomyopathy; obesity; depression; and headaches.

. . .

3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

4. . . . [Plaintiff] has the residual functional capacity to perform sedentary work . . . except he needs to avoid any pushing or pulling with the lower extremities. He can only occasionally engage in postural activities, such as stooping or crouching. He would need to avoid concentrated exposure to hazards. He would be limited to the performance of simple, routine and repetitive type tasks. He would need a cane when walking or standing.

. . .

5. [Plaintiff] has no past relevant work.

. . .

3

9. Considering [Plaintiff's] age, education, work
experience, and residual functional capacity, there are
jobs that exist in significant numbers in the national
economy that [he] can perform.

. . .

10. [Plaintiff] has not been under a disability, as
defined in the [] Act, since October 1, 2009, the date
the application was filed.

(Tr. 751-58 (bold font and internal parenthetical citations
omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits." Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope
of [the Court's] review of [such a] decision . . . is extremely
limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).
Plaintiff has not established entitlement to relief under the
extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead,
the Court "must uphold the factual findings of the ALJ if they are
supported by substantial evidence and were reached through
application of the correct legal standard." Hines, 453 F.3d at 561
(internal brackets and quotation marks omitted). "Substantial
evidence means 'such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion.'" Hunter v. Sullivan,

4

993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981),

5

and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work."

---

[2] The Act "comprises two disability benefits programs. The Disability Insurance Benefits Program . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

<u>Albright v. Commissioner of the Soc. Sec. Admin.</u>, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." <u>Bennett v. Sullivan</u>, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." <u>Mastro</u>, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." <u>Id.</u> at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. <u>Id.</u> at

_____

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." <u>Hunter</u>, 993 F.2d at 35 (internal citations omitted).

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." <u>Hines</u>, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." <u>Hall</u>, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." <u>Hines</u>, 453 F.3d at 562-63.

179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[5]

### B.  Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ inadequately accounted for Plaintiff's admitted limitations in concentration, persistence and pace in the RFC" (Docket Entry 11 at 4); and

2) "[t]he ALJ provided insufficient reasons for finding Plaintiff lacking in credibility regarding the severity of his health problems and his resulting limitations" (<u>id.</u> at 6).

---

[5]  A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 14 at 4-13.)

## 1. Concentration, Persistence, or Pace

In Plaintiff's first issue on review, he asserts that "the ALJ did not account for [Plaintiff's] admitted limitations in concentration, persistence and pace ['CPP'] by restricting him to [simple, routine, and repetitive tasks ('SRRTs')]." (Docket Entry 11 at 5.) According to Plaintiff, a restriction to SRRTs "references limitation in understanding a task, not limitation in staying on task." (Id. (citing Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)).) Plaintiff contends that, "[a]lthough the ALJ's findings at step two and three may not automatically require an RFC that imposes additional limitations, the [federal] district courts [in North Carolina] have repeatedly held that the ALJ must at least provide a sufficient explanation in the decision to allow the court to determine why no limitations as to CPP were included in the RFC despite the ALJ's finding that Plaintiff had moderate difficulties in CPP." (Id. (citing Salmon v. Colvin, No. 1:12CV1209, 2015 WL 1526020, at *3 (M.D.N.C. Apr. 2, 2015) (unpublished); Raynor v. Colvin, 5:14CV00271-BO, 2015 WL 1548996, at *2 (E.D.N.C. Apr. 7, 2015) (unpublished); Scruggs v. Colvin, No. 3:14CV00466-MOC, 2015 WL 2250890, at *5 (W.D.N.C. May 13, 2015) (unpublished)).) Plaintiff urges the "particularly harmful" nature of this error "in light of the already restrictive nature of [Plaintiff's] RFC for

9

less than the full range of sedentary work." (Docket Entry 11 at 6 (citing Social Security Ruling 96-9p, Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work – Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work, 1996 WL 374185, at *1 (July 2, 1996) ("SSR 96-9p") (noting that "[a]n RFC for less than a full range of sedentary work reflects very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare")).) Thus, Plaintiff argues that "remand is needed for compliance with *Mascio* and assessment of how any limitations in staying on task affect [Plaintiff's] already restrictive RFC." (Id.) Plaintiff's contentions do not warrant remand.

Indeed, the Fourth Circuit expressly has held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. However, the Mascio court also allowed for the possibility that an ALJ could adequately explain why moderate limitation in CPP would not require the RFC to include specific restrictions related to the ability to stay on task. Id. A neighboring federal district court recently had occasion to discuss this very point:

> Mascio does not broadly dictate that a claimant's
> moderate impairment in [CPP] always translates into a
> limitation in the RFC. Rather, Mascio underscores the
> ALJ's duty to adequately review the evidence and explain
> the decision . . . . An ALJ may account for a claimant's
> limitation with [CPP] by restricting the claimant to

10

> simple, routine, unskilled work where the record supports
> this conclusion, either through physician testimony,
> medical source statements, consultative examinations, or
> other evidence that is sufficiently evident to the
> reviewing court.

Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (Magistrate Judge's Report & Recommendation adopted by District Judge) (unpublished) (emphasis added); see also Hutton v. Colvin, No. 2:14-CV-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015) (unpublished) (finding reliance on Mascio "misplaced" and that ALJ "gave abundant explanation" for why unskilled work adequately accounted for claimant's moderate limitation in CPP, where ALJ relied on claimant's daily activities and treating physicians's opinions of claimant's mental abilities).

Here, the ALJ sufficiently explained why a restriction to SRRTs adequately accounted for Plaintiff's moderate limitation in CPP. At step three, although the ALJ assessed moderate limitation in that area of functioning, he also discussed Plaintiff's daily activities, which showed that Plaintiff retained some ability to sustain his concentration:

> Although [Plaintiff] mentioned in September 2007 that he
> had lost interest in almost everything he used to like,
> he told treating providers in April 2012 that he had
> begun reading a book, The Art of War. There was no
> indication that he was having any major problems doing
> so. He also apparently has no major problems watching
> his daughter's basketball games and track meets; or
> sitting and watching movies.

(Tr. 752.) Moreover, in determining Plaintiff's mental RFC, the ALJ relied, in part, on the opinions of the state agency

11

psychological consultants. (Tr. 756.)[6] Notably, Dr. Nancy Y. Herrera concluded that, despite moderate limitation in CPP (see Tr. 108), Plaintiff could "maintain attention [and] concentration for at least [two] hours at a time as required for the performance of simple tasks" (Tr. 113 (emphasis added)).[7]

Accordingly, the ALJ's decision sufficiently shows that he considered Plaintiff's ability to "stay on task," which the Mascio court distinguished from the ability to perform simple tasks, see Mascio, 780 F.3d at 638, and created "an accurate and logical bridge," Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000), between the record evidence and his conclusion that Plaintiff can perform SRRTs, notwithstanding moderate limitation in CPP. As a result, the Court should decline to remand under Mascio. See Del Vecchio v. Colvin, No. 1:14CV116, 2015 WL 5023857, at *6 (W.D.N.C. Aug. 25, 2015) (unpublished) ("Here, unlike in Mascio, the ALJ discussed substantial record evidence in determining [the claimant's] mental RFC, and his explicit reliance on [the state agency consultant's] opinion adequately explains why [the claimant's] limitations in [CPP] did not translate into any

---

[6] The ALJ did not fully credit the state agency psychological consultants's opinions because he disagreed with their assessment that Plaintiff had moderate limitation in social functioning. (See Tr. 756; see also Tr. 92, 108.) The ALJ found that Plaintiff had only mild limitation in that area of functioning. (See Tr. 756.)

[7] The other state agency psychological consultant, Dr. Bonny Gregory, found mild limitation in CPP at the initial stage of the claim process (see Tr. 92), but also concluded that Plaintiff could "maintain attention [and] concentration for at least [two] hours at a time as required for the performance of simple tasks" (Tr. 96 (emphasis added)).

additional restrictions . . . . Therefore, the Court is not left to guess at the ALJ's decision-making process.").

In conclusion, Plaintiff's first assignment of error fails to warrant relief.

## 2. Credibility Evaluation

Plaintiff next contends that the ALJ provided insufficient reasons for discounting Plaintiff's credibility regarding his limitations. (See Docket Entry 11 at 6-10.) Specifically, Plaintiff takes issue with the ALJ's observations that a "February 2013 echocardiogram showed 'no substantial pathology' (Tr[.] 755) and that [Plaintiff's] vascular surgery records show that he is able to exercise regularly and does not have lifestyle limiting claudication" (Tr. 754). (Docket Entry 11 at 7.) Further, Plaintiff asserts that the ALJ's failure to "give proper credence to [Plaintiff's] attested limitations is further highlighted by [the ALJ's] summary dismissal of the [relevant] listings." (Id. at 10.) In that regard, Plaintiff maintains that his "impairments implicate parts or all of the criteria of three listings – 1.05C [Amputation (Due to Any Cause)], 4.02A [Chronic Heart Failure] and 4.12A [Peripheral Arterial Disease]" (id. at 12), but that the ALJ failed to "compare the facts of [Plaintiff's] medical records to the criteria of the relevant listings, instead using the same summary 'considered' language denounced in *Radford v. Colvin*[, ]734

13

F.3d 288, 295 (4th Cir. 2013)" (id. at 10).[8] Plaintiff's argument fails to entitle him to relief.

Regarding the February 2013 echocardiogram, Plaintiff points out that the test revealed an ejection fraction of 30%, which "can hardly be described as not substantial as it is listing level severity under the [Social Security Administration's] own guidelines." (Id. at 7 (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 4.02A).) However, Plaintiff's argument overlooks the fact that Listing 4.02 provides that the "level of severity is met when the requirements *in both [subsections] A and B* are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 4.02 (emphasis in original). Thus, to meet that listing, Plaintiff must demonstrate "an ejection fraction of 30 percent or less" and one of the following: 1) "[p]ersistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living," along with a medical consultant's conclusion that "the performance of an exercise test would present a significant risk"; 2) "[t]hree or more separate episodes of acute congestive heart failure within a consecutive 12-month period with

---

[8] "Under Step 3, the [Social Security Administration's SEP] regulation states that a claimant will be found disabled if he or she has an impairment that 'meets or equals one of [the] listings in appendix 1 of [20 C.F.R. Pt. 404, Subpt. P] and meets the duration requirement.'" Radford, 734 F.3d at 293 (quoting 20 C.F.R. § 404.1520(a)(4)(iii)) (internal bracketed numbers omitted). "The listings set out at 20 CFR pt. 404, subpt. P, App. 1, are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990) (internal footnote and parentheticals omitted).

14

evidence of fluid retention . . . requiring acute extended physician intervention . . . for 12 hours or more, separated by periods of stabilization"; or 3) "[i]nability to perform an exercise tolerance test at a workload equivalent to [five] METS or less due to" various symptoms of heart failure.  Id.  Plaintiff has not even attempted to argue that his cardiomyopathy satisfies any of the requirements of subsection B.  (See Docket Entry 11 at 7.)

Furthermore, the introductory paragraphs to the cardiovascular listings make clear that "measurements [such as a decreased ejection fraction] alone do not reflect [a claimant's] functional capacity, which [the Social Security Administration] evaluate[s] by considering all of the relevant evidence."  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 4.00D(2)(a)(iv).  In accordance with that regulatory guidance, the ALJ focused his discussion on the impact of Plaintiff's cardiomyopathy on his ability to function:

> With respect to [Plaintiff's] heart problems, in the summer of 2012, he presented to the hospital with chest pain.  Catheterization revealed mild-to-moderate non-obstructive coronary artery disease (CAD) with cardiomyopathy. [Plaintiff] had an [ejection fraction] of about 20%. [Plaintiff's] cardiomyopathy was attributed to viral myocarditis.  By July 28, 2012, he was doing well. He said he stopped smoking a month prior and had decreased the amount of alcohol use.  The following month, on the 15th, [Plaintiff] felt well.  There was no substantial pathology evidenced on a February 2013 echocardiogram.  In May 2013, he was experiencing only occasional jolts in his chest, and in March 2014, he was not having any chest pain.

15

(Tr. 755 (internal citations omitted).)  Other than challenging the ALJ's characterization of the February 2013 echocardiogram as showing "no substantial pathology" (see Docket Entry 11 at 7; see also Tr. 755), Plaintiff has not attacked the accuracy of the ALJ's summarization of Plaintiff's heart impairment treatment (see Docket Entry 11 at 7).  Under these circumstances, the ALJ's description of the echocardiogram as showing "no <u>substantial</u> pathology" (Tr. 755 (emphasis added)) does not constitute reversible error.

    With regard to Plaintiff's peripheral vascular disease, Plaintiff faults the ALJ for "cit[ing] to a single treatment note for the proposition that [Plaintiff] was able to exercise regularly and did not have lifestyle limiting claudication." (Docket Entry 11 at 7.)  According to Plaintiff, his "treatment records demonstrate[] that the vast majority of the time he was described as having significant [peripheral vascular disease] in his legs resulting in claudication which limited his ability to walk for 100 yards or less and/or which limited his lifestyle." (<u>Id.</u> at 8.) Plaintiff argues that, "[w]hen the overall substance of the records are consistent with the claimant's testimony, . . . discrediting that testimony based on a single treatment note is a finding that is not supported by substantial evidence on the record as a whole." (<u>Id.</u> at 7-8 (citing <u>Blanton-Patteson v. Colvin</u>, No. 1:11CV00476, slip op., at *4 (M.D.N.C. June 4, 2014) (unpublished)).)

Plaintiff's argument in this regard misses the mark. The ALJ did not, in fact, cite to a single treatment record to support <u>his own</u> proposition that Plaintiff could exercise regularly and did not have lifestyle limiting claudication; rather, the ALJ reviewed Plaintiff's long treatment history for his peripheral vascular disease dating back to December 2004 in a fair degree of detail (<u>see</u> Tr. 753-54), and merely observed, as part of that lengthy discussion, that Plaintiff's "<u>[m]ost recent</u> vascular surgery records indicate that [Plaintiff] is able to run and exercise regularly." (Tr. 754 (emphasis added).) Indeed, the very last treatment note in the record, dated July 25, 2014, reflects that Plaintiff "is able to run and exercise regularly" and that his "[c]laudication [is] not lifestyle limiting" (Tr. 1039), and Plaintiff does not in any other way contest the accuracy of the ALJ's discussion of Plaintiff's peripheral vascular disease (<u>see</u> Docket Entry 11 at 8-10). The Court should reject Plaintiff's claim that the ALJ erred in his analysis of Plaintiff's peripheral vascular disease.

Finally, Plaintiff argues that the ALJ erred by failing to expressly compare the signs and symptoms in Plaintiff's medical records with the requirements of Listings 1.05C, 4.02A, and 4.12A, in violation of <u>Radford</u>. (<u>Id.</u> at 11-12.) However, "[i]n order to satisfy a listing and qualify for benefits, a person must meet <u>all</u> of the medical criteria in a particular listing." <u>Bennett</u>, 917

17

F.2d at 160 (emphasis added) (citing <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990), and 20 C.F.R. § 404.1526(a)); <u>see also</u> <u>Zebley</u>, 493 U.S. at 530 ("An impairment that manifests only some of those criteria [in a listing], no matter how severely, does not qualify."). Moreover, an ALJ must identify the relevant listed impairments and compare them to a claimant's symptoms only "[w]here <u>ample evidence</u> in the record [exists] to support a determination that [a claimant's impairment] met or equalled [sic] one of the [] impairments listed in Appendix 1." <u>Cook v. Heckler</u>, 783 F.2d 1168, 1172-73 (4th Cir. 1986) (emphasis added); <u>see also</u> <u>Russell v. Chater</u>, No. 94-2371, 60 F.3d 824 (table), 1995 WL 417576, at *3 (4th Cir. July 7, 1995) (unpublished) ("<u>Cook</u>, however, does not establish an inflexible rule requiring an exhaustive point-by-point discussion [of listings] in all cases.").[9]

The ALJ here did not err in his evaluation of the relevant listings. He provided the following analysis in determining that Plaintiff's physical impairments did not meet or equal any listings:

> Listings 1.02, 1.03, 1.05, 4.12, and 4.04 were considered. However, they are neither met nor equaled. The requisite deficits contained in each listing are not evidenced in the record. This finding is supported by the objective medical evidence of record and other evidence of record, <u>as reflected below in Finding #4</u>.

---

[9] Nor does the more recent ruling in <u>Radford</u> counsel otherwise. Although the Fourth Circuit there remanded due to an ALJ's "insufficient legal analysis" at step three, it did so consistently with the standard set in <u>Cook</u>, as the record contained "probative evidence strongly suggesting that [the claimant] me[t] or equal[ed a particular listing]." <u>Radford</u>, 734 F.3d at 295.

(Tr. 751 (emphasis added).) Although the ALJ did not expressly consider Listing 4.02 (Chronic Heart Failure), for the reasons detailed above in conjunction with Plaintiff's first assignment of error, the record lacked "ample evidence" that Plaintiff could meet any of the requirements of subsection B of that listing and thus the ALJ labored under no obligation to expressly discuss that listing. Similarly, Listing 1.05C (Amputation (Due to Any Cause) expressly requires amputation of "[o]ne hand <u>and</u> one lower extremity" resulting in an "inability to ambulate effectively," <u>see</u> 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.05C (emphasis added), and Plaintiff has not shown that he underwent amputation of <u>both</u> a hand <u>and</u> a leg. Thus, in the absence of "ample evidence" that Plaintiff could meet Listing 1.05C, the ALJ's statement that he "considered" Listing 1.05 and that its "requisite deficits . . . [we]re not evidenced in the record" (Tr. 751) does not run afoul of <u>Cook</u> and its progeny.

Listing 4.12A (Peripheral Arterial Disease) requires evidence of intermittent claudication[10] and ankle/brachial systolic blood pressure ratios (also called ankle/brachial indices or "ABIs") of less than 0.50. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 4.12A. The relevant introductory paragraphs to that listing clarify that the ABI referred to in Listing 4.12A "is the <u>higher</u> of the

---

[10] Plaintiff's medical records define intermittent claudication as "an aching, tired, and sometimes burning pain in the legs that is brought on by exercise and made better by rest." (Tr. 1018.)

19

pressures recorded from the posterior tibial and dorsalis pedis arteries in the affected leg." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 4.00(G)(7)(a) (emphasis added). Plaintiff has proffered evidence of intermittent claudication (see, e.g., Tr. 37-38, 603, 623, 628, 768, 771, 780-81, 932-33, 938-39, 1007, 1021, 1034, 1039); however, the higher of his left leg ABI scores in each of the relevant tests has not fallen below 0.50 (see Tr. 716 (6/27/11: 0.59 and 0.43), 930 (11/7/11: 0.55 and 0.43), 1014 (8/30/13: 0.58 and 0.48), 1029 (7/9/14: 0.55 with non-detectable dorsalis pedis artery)). Thus, Plaintiff's evidence does not satisfy all of the criteria of Listing 4.12A.

Moreover, the Court should find that the ALJ's evaluation of Listing 4.12A satisfies applicable law. In that evaluation, quoted above, the ALJ explicitly referenced "the objective medical evidence . . . reflected . . . in Finding #4." (Tr. 751.) In turn, "Finding #4" constitutes the ALJ's RFC determination and his discussion of the medical evidence. (See Tr. 753-57.) In that discussion, the ALJ acknowledged Plaintiff's intermittent claudication, and expressly referenced Plaintiff's August 2013 and July 2014 lower arterial Doppler tests. (Tr. 754.) Thus, the ALJ's decision shows that he considered the relevant medical evidence to determine whether Plaintiff's peripheral arterial disease met the requirements of Listing 4.12A.

In sum, the ALJ did not err in his evaluation of Plaintiff's credibility.

### III.  CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 10) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be granted, and that judgment be entered for Defendant.


                              /s/ L. Patrick Auld
                           **L. Patrick Auld**
                  **United States Magistrate Judge**

June 14, 2016